```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CHRISTOPHER ADDISON, DAVID WILLET,
and JAMES VANDERHEYDT,
```

|  |  |
|---|---|
| Plaintiffs, | **MEMORANDUM OF DECISION AND ORDER** |
| -against- | 10-CV-1435 (ADS)(ARL) |

```
REITMAN BLACKTOP, INC., REITMAN
SEALCOATING INC., AND ROBERT
REITMAN, an individual,
                              Defendants.
----------------------------------------------------------X
```

**APPEARANCES:**

**Goldberg & Dohan LLP**
*Attorneys for the Plaintiffs*
11 Park Place, Suite 1100
New York, NY 10007
  By: Penn Ueoka Dodson, Esq., Of Counsel

**Gabor & Gabor**
*Attorneys for the Defendants*
400 Garden City Plaza
Suite 406
Garden City, NY 11530
  By: David George Gabor, Esq. & Hope Senzer Gabor, Esq., Of Counsel

**SPATT, District Judge.**

On April 2, 2010, the plaintiffs Christopher Addison and David Willet commenced this action against Reitman Blacktop, Inc., Reitman Sealcoating Inc., and Robert Reitman (collectively the "Defendants") for damages arising from an employment dispute ("Initial Complaint"). On September 22, 2010, Addison and Willet filed an Amended Complaint ("Amended Complaint") adding James Vanderheydt as an additional plaintiff (together with Addison and Willet the "Plaintiffs").

Presently before this Court are three motions: 1) Plaintiffs' Motion to Strike the Defendants' Answer to the Initial Complaint ("Motion to Strike"); 2) Plaintiffs' Motion for a Default Judgment ("Motion for a Default Judgment"); and 3) Defendants' Motion to Set Aside the Default Judgment ("Motion to Set Aside the Default"). For the foregoing reasons, the Court denies the Motion to Strike as moot, denies the Motion for a Default Judgment, and grants the Motion to Set Aside the Default.

## I. BACKGROUND

### A. Factual Background

On April 2, 2010, two of the plaintiffs, Christopher Addison and David Willett, commenced the instant action against Defendants Reitman Blacktop, Inc. ("Blacktop") and Reitman Sealcoating, Inc. ("Sealcoating" and together with Blacktop the "Corporate Defendants"), and Robert Reitman individually ("Reitman" and together with the Corporate Defendants the "Defendants"). On September 22, 2010, the complaint was amended to include allegations by James Vanderheydt. The following facts are derived from the Amended Complaint, as well as the parties' submissions on the Motion to Strike, Motion for a Default Judgment, and Motion to Set Aside the Default. The Court notes that because James Vanderheydt was added as a plaintiff on September 22, 2010, references to actions by the "Plaintiffs" prior to the Amended Complaint, including arguments in the Motion to Strike, only include Addison and Willet.

The Plaintiffs in this action were formerly employed by Defendant Blacktop in the construction business, where they primarily performed manual labor relating to asphalt, paving, and driveway construction. Defendant Blacktop is a construction company that provides driveway construction, paving, asphalt laying, masonry, and related services. Defendant

Sealcoating is a related entity that the Plaintiffs allege form a "single integrated enterprise" with Blacktop and does business as Reitman Blacktop or B. Reitman Blacktop. (Am. Compl. ¶¶ 13 & 15.) Defendant Reitman has an ownership interest and is one of the ten largest shareholders of Blacktop. The Plaintiffs' allege that during their employment, Reitman and the Corporate Defendants failed, among other things, to pay them a minimum wage; properly record their hours; provide break time; and pay them overtime. The Initial Complaint and the Amended Complaint assert causes of action for violations of the Fair Labor Standards Act and the New York Labor Law, unjust enrichment, and breach of contract.

## B. Procedural Background

After filing the Initial Complaint on April 2, 2010, the Plaintiffs attempted to effectuate service on the Defendants. The Amended Affidavits of Service reflect that the Corporate Defendants were served via the Secretary of State of the State of New York on June 21, 2010. (Docket #s 5, 6.) In an Affidavit of Due Diligence and Attempted Service dated June 21, 2010 (the "Affidavit of Attempted Service"), a process server named Jonathan Safran detailed his attempt to personally serve Reitman on May 6, 2010. (Docket # 4.) However, according to the Plaintiffs, although not personally served, Reitman had actual notice of the lawsuit as early as April 23, 2010, and by April 24, 2010 was in possession of the Initial Complaint. (See Aff. of Penn Dodson in Opp. to the Motion to Set Aside the Default; Opp. to Motion to Set Aside the Default, Ex. A.)

Nevertheless, on July 16, 2010, four days after the Corporate Defendants answer was due, Reitman filed an answer in his capacity as President of the Corporate Defendants ("Initial Answer"). Although the Electronic Case Filing System ("ECF") indicates that the Initial Answer was filed on July 16, 2010, and an affirmation of service is attached to the Initial Answer dated

July 16, 2010, the Plaintiffs' assert that the Initial Answer was not posted on ECF until July 20, 2010. As a result of this confusion, on July 19, 2010, the Plaintiffs filed a Request for an Entry of Default as to the Corporate Defendants on the ground that they did not answer the Initial Complaint. The Clerk of the Court declined to enter a notation of default because the Corporate Defendants had filed the Initial Answer.

Thereafter, on July 21, 2010, the Plaintiffs filed the Motion to Strike the Initial Answer. On August 8, 2010, Reitman submitted a letter to the Court requesting a thirty day extension to respond to the motions and to retain an attorney to represent himself and the Corporate Defendants. The Court granted Reitman's request on August 10, 2010 and noted that it was a "Final Extension."

On September 9, 2010, Neal Mandel, a representative from Citak Law Group PLLC contacted the Plaintiffs' counsel Penn Ueoka Dodson to discuss an extension of time for the Defendants to retain counsel and the possibility of reaching a settlement. In a follow up letter of the same date—although received by the Plaintiffs on September 13, 2010—the Defendants confirmed that the parties agreed to extend the time allowed for the Defendants to retain counsel; requested that the Plaintiffs' consent to extend the deadline to answer to October 12, 2010; and made a request for a settlement demand ("September 9th Letter"). The Defendants further stated:

> Once you forward the documentation requested we should be able to complete our review of the information and compare same to Mr. Reitman's records. We should be able to reply to you and have an intelligent discussion within five days of receipt of information.

(Opp. to Motion to Set Aside the Default, Ex. B.) There is no indication on the record whether the Plaintiffs consented to the Defendants' request to extend the deadline to answer the Initial Complaint to October 12, 2010.

On September 22, 2010, the Plaintiffs sent a settlement demand to the Defendants. Also on September 22, 2010, without waiting for a response to the settlement demand, and with the Motion to Strike the Initial Answer still outstanding, the Plaintiffs filed the Amended Complaint adding James Vanderheydt as an additional plaintiff, and correcting certain typographical errors. After the Defendants failed to answer the Amended Complaint, on October 20, 2010, the Plaintiffs, now including James Vanderheydt, filed a motion for an entry of default and the Motion for a Default Judgment against all Defendants based on their failure to answer the Amended Complaint or otherwise properly appear through counsel in accordance with the Court's August 10, 2010 Order. The Clerk of the Court entered a notation of default on November 3, 2010. The Defendants retained new counsel on November 4, 2010, and on November 8, 2010, the Defendants filed the Motion to Set Aside the Default the Default Judgment (together with the Motion for a Default Judgment the "Default Motions") and an answer to the Amended Complaint ("Second Answer").

The discussion below resolves the Motion to Strike and the Default Motions.

## II. DISCUSSION

### A. The Motion to Strike

On July 21, 2010, the Plaintiffs filed a Motion to Strike to Initial Answer, arguing that: (1) the Corporate Defendants may not appear *pro se* and the Initial Answer was untimely; and (2) the Court should consider Reitman to have been served on the same date as the Corporate Defendants and therefore strike the Initial Answer as untimely and in bad faith. The Court initially notes the difficulty caused by the fact that the Plaintiffs filed the Motion for a Default Judgment based on the Defendants' failure to answer the Amended Complaint while their Motion to Strike the Initial Answer was still pending before this Court. Because the Court

addresses the merits of an unopposed motion, there was no guarantee that the Court would have stricken the Initial Answer. As discussed below, pursuant to Fed. R. Civ. P. 15 ("Rule 15"), if the Court chose to deny the Motion to Strike, the Plaintiffs' would have had to seek leave to file the Amended Complaint.

Rule 15 governs the amendment of the pleadings, and specifies in what situations a Plaintiff may submit an amended pleading as a matter of course, and what circumstances require leave of the Court. Rule 15(a)(1)(b) allows a party to amend its pleading as a matter of course anytime prior to the filing of a responsive pleading or within 21 days of the filing of a responsive pleading. Unless either of these circumstances is present "a party may amend the party's pleading only by leave of court or by written consent of the other party . . . ." Fed. R. Civ. P. 15(a)(2). Here, the Defendants filed the Initial Answer—a responsive pleading under Rule 7(a)—on July 16, 2010. Even accepting as true the Plaintiffs' contention that the Initial Answer was not filed on ECF or otherwise received until July 20, 2010, the latest date the Plaintiffs could have filed the Amended Complaint without seeking leave of the Court was August 10, 2010. However, the Plaintiffs did not file the Amended Complaint until September 22, 2010, more than a month after the deadline imposed under Rule 15, and therefore were required to seek leave from the court to submit the amended pleading. Thus, had the Court denied the Motion to Strike, the Motion for a Default Judgment based on a failure to answer an improperly filed Amended Complaint would have been premature.

By filing the Motion for a Default Judgment while the Motion to Strike was pending, the Plaintiffs leave the Court with two options to resolve the three pending motions. First, the Court can render decision on the Motion to Strike, and based upon that decision, either deny the Motion for a Default Judgment as premature as to Reitman, the Corporate Defendants, or both,

6

or address the Default Motions on their merits.  Alternatively, the Court can deny the Motion to Strike as moot and address the Default Motions on their merits.  Because the Court ultimately concludes that the Motion to Set Aside the Default ought to be granted on the merits, and because the Defendants do not object to the Amended Complaint and filed the Second Answer, the Court follows the latter option.  Thus, the Court denies the Motion to Strike as moot and addresses the merits of the Default Motions below.  The Court will, however, address the arguments regarding the validity of the Initial Answer in its discussion of whether the Defendants' default was "willful."

**B.  The Default Motions**

Contrary to the Plaintiffs' contention, the Court does not need to first grant a motion for a default judgment to address a motion to vacate the entry of default.  When deciding a motion for a default judgment, "the Second Circuit has observed [that] the Court is guided by the same factors which apply to a motion to set aside entry of a default."  Franco v. Ideal Mortgage Bankers, Ltd., 07-CV-3956, 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23, 2010) (citing Enron Oil Corp. v. Diakuhara, 90, 96 (2d Cir. 1993); Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 170-171 (2d Cir.2001)).  Thus, a decision on one of the Default Motions will be determinative of the other.  Here, the Court chooses to address the merits of the Motion to Set Aside the Default, but will consider the arguments contained in both of the Default Motions.

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk shall enter the party's default."  Fed. R. Civ. P. 55(a).  Once an entry of default has been made, the defendant may move to set aside the default entry pursuant to Fed. R. Civ. P. 55(c) for "good cause shown."  Fed. R. Civ. P. 55(c).  Where, as here, there has been an entry of default

by the Clerk of the Court, but no default judgment, the Court decides the Defendants Motion to Set Aside the Default—also known as a motion to vacate the entry of default—pursuant to Rule 55(c), which is more lenient than the standard to set aside a default judgment under Rule 60(b). See Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981) ("[T]he standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b).")

The question for the Court, then, is whether that Defendants' Motion to Set Aside the Default is supported by good cause; an inquiry that turns on the Court's analysis of three factors. In determining whether good cause exists to set aside an entry of default, courts should consider: (1) "the willfulness of the default"; (2) "the existence of a meritorious defense"; and (3) "the level of prejudice that the non-defaulting party may suffer should relief be granted." Pecarsky, 249 F.3d at 171 (citations omitted). "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." Enron, 10 F.3d at 96.

"It is well established that default judgments are disfavored," and that "[a] clear preference exists for cases to be adjudicated on the merits." Pecarsky, 249 F.3d at 171 (citations omitted). Thus, "in ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits." New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005) (citing Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 514 (2d Cir. 2001)). Each of the three factors for assessing whether the Defendants have shown good cause for setting aside the entry of default are discussed, in turn, below.

### 1. Willfulness

A finding of willfulness is appropriate where "there is evidence of bad faith" or the default arose from "egregious or deliberate conduct." Holland v. James, No. 05 Civ. 5346, 2008 WL 3884354, at *2 (S.D.N.Y. Aug. 21, 2008) (quoting Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 60-61 (2d Cir. 1996)). Courts should "resolve any doubt about [a defendant's] willfulness in [their] favor." Raheim v. New York City Health and Hosps. Corp., No. 96 Civ. 1045, 2007 WL 2363010, at *3 (E.D.N.Y. Aug. 14, 2007) (citing Enron, 10 F.3d at 98).

In the Motion for a Default Judgment, the Plaintiffs' argue that the Defendants willfully defaulted by failing to file a non-*pro se* answer and by failing to obtain counsel. However, within one week of the entry of default, less than a month after the Defendants answer to the Amended Complaint was due, counsel for the Defendants made an appearance and filed the Second Answer. Rather than address the timeliness and sufficiency of these actions in their opposition to the Motion to Set Aside the Default, the Plaintiffs' request that the Court find willful default based on the overall conduct of the parties throughout the litigation. In assessing the overall conduct of the Defendants, the Court addresses the Plaintiffs' allegations of misconduct in the Motion to Strike and the Default Motions.

First, the Court addresses the Plaintiffs' allegations outlined in the Motion to Strike and the Default Motions that Reitman evaded personal service. Second, the Court addresses the Plaintiffs' contention from the Motion to Strike that the Defendants exhibited bad faith in filing the Initial Answer. Finally, the Court addresses the Plaintiffs' allegations in the Default Motions regarding the Corporate Defendants' failure to secure counsel in a timely manner and properly participate in the litigation. Ultimately, the Court finds that neither Reitman nor the Corporate Defendants "willfully" defaulted. See S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998)

(observing that willfulness, in the context of a default, typically refers to conduct that is more than merely negligent or careless).

### a. Whether Reitman Willfully Defaulted by Evading Personal Service

The Plaintiffs urge the Court to find that Reitman's default was willful based on conclusory allegations made in the Motion to Strike and the Default Motions that Reitman evaded personal service. Although the record reflects that Reitman was never personally served with a copy of the summons and complaint in compliance with Fed. R. Civ. P. 4—indeed, the only evidence on the record relating to service on Reitman is the Affidavit of Attempted Service, which shows that personal service was never accomplished—the Plaintiffs' allege that Reitman had "actual notice" and therefore the Court should infer that that the Plaintiffs' inability to properly serve Reitman was because he was evading service. In support of their claim that Reitman had "actual notice," the Plaintiffs submitted a transcription of a voicemail from Reitman to Plaintiffs' counsel from April 23, 2010 regarding the case, and a copy the first page of the Initial Complaint that Reitman faxed to Plaintiffs' counsel on April 24, 2010.

Nevertheless, the Court declines to make the inference that Reitman was evading service because the allegation is unsupported by the record and actual notice does not relieve a plaintiff of his obligation to properly effectuate service. First, even if Reitman can be said to have had actual notice, the Court must not necessarily infer that the Plaintiffs inability to effectuate proper service was because Reitman was evading service. The Second Circuit has clearly rejected the argument that "actual notice" is sufficient to cure improper service. See Nat'l Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir.1991); Martin v. New York State Dep't of Mental Hygiene, 588 F.2d 371 (2d Cir. 1978); GMA Accessories v. BOP, LLC, No. 07-CV-3219, 2008 WL 762782, at *2 (S.D.N.Y. March 20, 2008); Rafferty v. Halprin, No. 90-CV-2751, 1990 WL

165757, at *1 (S.D.N.Y. Oct. 19, 1990) (holding that even where defendants had received the summons and complaint and mailed back the acknowledgment form, it did not cure the defect in the service of process).

As for the evidence in the record, the only document regarding attempted service on Reitman is the Affidavit of Attempted Service prepared by a process server named Jonathan Safran ("Safran"). (Docket # 4.) In the Affidavit of Attempted Service, Safran identifies the reason service could not be effectuated as "Party is evading service." (Id.) However, Safran also writes in his notes on the Affidavit of Attempted Service that the guard at the gated community where Reitman allegedly lived indicated that Reitman had not been seen in over a month and that the guard did not believe Reitman still resided there. (Id.) Thus, Safran's failure to properly serve Reitman may have been due to the Plaintiffs' error in identifying Reitman's residence or attempting to serve Reitman when he was not home, as opposed to the more nefarious view proffered by the Plaintiffs that Reitman was evading service.

In what seems like an effort to amplify the allegation, the Plaintiffs argue in their opposition to the Motion to Set Aside the Default that Reitman evaded personal service for "six months." However, after the one documented failed attempt at personal service at his home address, and even taking into account the Plaintiffs' undocumented assertion that they also attempted service at Reitman's business address, the Plaintiffs' provide no additional examples where they attempted and failed to serve Reitman. Nor is there any entry in the record or allegation by the Plaintiffs' that they continued to attempt service on Reitman after June 21, 2010. Thus, even assuming Reitman initially evaded service, there is certainly no evidence to support the Plaintiffs' argument that Reitman evaded service for "six months."

11

More accurately, what the record does reflect, is that Reitman filed the Initial Answer on July 16, 2010; that Reitman sought leave from the Court to retain counsel for the Corporate Defendants on August 8, 2010; contacted the Plaintiffs through counsel on September 9, 2010 to discuss extensions of time to respond and engage in settlement discussions; and on November 8, 2010 filed the Motion to Set Aside the Default and the Second Answer. These affirmative actions, coupled with the insufficient evidence that Reitman was evading service, do not even come close to showing the type of egregious actions that has compelled other courts to uphold a default based on evading service. See, e.g., Commercial Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 243-44 (2d Cir.1994) (defendant failed, for untenable reasons to answer the complaint after "purposely evad[ing] service for months"); S.E.C. v. Breed, No. 01-CV-7798, 2004 WL 1824358, at *8 (S.D.N.Y. Aug. 13, 2004) (holding that a defendant's default was willful because the evidence suggested defendant evaded service where plaintiffs attempted personal service ten times, including when there were cars in the driveway, and the court did not find the defendant's explanation for why she was never home compelling).

### b. Whether the Defendants Conduct in Filing the Initial Answer Supports a Finding of Willful Default

Although not directly argued by the Plaintiffs in either of the Default Motions, the Court deems it prudent to consider the allegations in the now moot Motion to Strike when assessing whether the Defendants overall conduct indicates a willful default. Notably, because the Initial Answer was filed by Reitman *pro se*, in the subsequent analysis the Court bears in mind the general rule that where a defendant is proceeding *pro se*, he should be afforded "extra leeway in meeting the procedural rules governing litigation and trial judges must make some effort to protect a party so appearing from waiving a right to be heard because of his or her lack of legal knowledge." Enron, 10 F.3d at 96.

In the Motion to Strike, the Plaintiffs argued that the Initial Answer as to Reitman and the Corporate Defendants was invalid because it was untimely filed four days after it was due. Even assuming the Court agreed with the Plaintiffs' contention that service on the Corporate Defendants on June 21, 2010 also constituted service on Reitman, the Court does not believe that it is appropriate to strike an answer as untimely where there was only a four day delay and the answer was filed *pro se*. Llewellyn v. North Am. Trading, No. 93-CV-8894, 1996 WL 715532 at *2 (S.D.N.Y. Dec. 11, 1996) (denying motion to strike an untimely answer because doing so "would violate the policy resolving cases on the merits"). Thus, because the Court would not have stricken the Initial Answer on the grounds that it was "untimely," the four day delay in filing the Initial Answer is not indicative of "willful default" for the purposes of denying the Motion to Set Aside the Default.

Next, the Plaintiffs asserted in the Motion to Strike that the Initial Answer was invalid because the substance of the Initial Answer suggested that Reitman drafted it in "bad faith." In support of their claim of "bad faith," the Plaintiffs pointed to one example in the Initial Answer where Reitman denied knowledge as to his current residence. However, the Court notes that there were a number of paragraphs relating to the business and location of the Corporate Defendants, as well as Reitman's relationship to the Corporate Defendants that Reitman does not deny. (See, e.g., Initial Compl. ¶¶ 7, 9, 12, 13, 21, & 22). The Court has discretion to strike a pleading that fails to comply with Fed. R. Civ. P. 8(b)(3) ("Rule 8"), which states that "[a] party that intends in good faith to deny all the allegations of a pleading . . . may do so by a general denial." However, the Plaintiffs' fail to show how one example, which may have been a mistake of a *pro se* party, indicates "bad faith" in violation of Rule 8.

Finally, the Plaintiffs correctly argue in the Motion to Strike that, as corporations, Blacktop and Sealcoating could not appear *pro se*, and therefore their Initial Answer was invalid as to the Corporate Defendants. However, invalidity, particularly on procedural grounds, is not equivalent to bad faith. Furthermore, as discussed in greater detail below, the actions by Reitman and the Corporate Defendants after filing the Initial Answer further support that the procedural errors in filing the Initial Answer were not evasive maneuvers indicative of willful default.

### c. Whether the Corporate Defendants Conduct in Obtaining Counsel Supports a Finding of Bad Faith

In the Default Motions, the Plaintiffs contend that the Corporate Defendants exhibited willful default by failing to secure counsel. By the Order of August 10, 2010 the Court granted Reitman thirty days to retain an attorney to represent himself and the Corporate Defendants. The record shows that counsel for the Corporate Defendants contacted the Plaintiffs to engage in settlement negotiations within the 30 days granted by the Court to obtain counsel. (Opp. to Motion to Set Aside the Default, Ex. B.) Although counsel did not make a formal appearance, the failure to do so is not so indicative of bad faith as to suggest willful default.

According to the Plaintiffs, the Corporate Defendants failed to comply with the Court's order because the individual who contacted then on behalf of the Defendants was not a licensed attorney. However, the Court will not view the conduct of the Corporate Defendants in a negative light based simply because a non-attorney representative of a law firm hired by the Defendants contacted the Plaintiffs. The argument as to whether the specific person who contacted the Plaintiffs was a lawyer is not relevant because the contact by a law firm with settlement authority is sufficiently indicative of intent to defend or resolve the action.

Furthermore, upon receiving notice of the entry of default, the Defendants, through newly retained counsel, almost immediately filed the Motion to Set Aside the Default and the Second Answer. Although it is unclear when the answer to the Amended Complaint was actually due, presuming the Defendants were properly served on September 22, 2010, the earliest the answer could have been due was October 7, 2010. See Fed. R. Civ. P. 15(a)(3) (stating that a party has fourteen days to respond to an amended pleading). Because, as discussed below, the Second Answer was untimely by less than one month and the Defendants have offered an excuse for the delay, the Court does not find that the Corporate Defendant's response constituted willful default.

In the Affidavit of Robert Reitman in Support of the Motion to Set Aside the Default, Reitman explains that he failed to file the Second Answer prior to receiving notice of the entry of default because he believed that the parties were engaged in settlement discussions. The Court finds this excuse credible in light of the fact that the September 9th Letter indicates that parties were engaged in settlement discussions, and because the Defendants submitted the Second Answer within one week of receiving notice of the entry of default. The Court also bears in mind that "[w]hile courts are entitled to enforce compliance with the time limits of the Rules by various means, the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981); see also Sony Corp. v. Elm State Elecs., Inc., 800 F.2d 317, 319 (2d Cir. 1986) ("[D]istrict courts regularly exercise their discretion to deny technically valid motions for default."). Thus, because the Defendants have provided a credible excuse for the delay in filing the Second Answer and have shown their intention to participate in this litigation, the untimely Second Answer does not support a finding of willful default.

The Court finds that, taken together, the filing of the Initial Answer, the retention of counsel to engage in settlement negotiations, and the filing of the non-*pro se* Second Answer within one week of the entry of default, reflects that the Defendants have not avoided this action or exhibited bad faith in participating in this action. Gravatt v. City of New York, No. 97-CV-0354, 1997 WL 419955, at *4 (S.D.N.Y. July 28, 1997) ("Moreover, the fact that [the defendant] immediately responded upon learning of the default judgment is evidence of a lack of obstructionist motives on their part."); cf. Dow Chem. Pacific Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 336 (2d Cir. 1986) (affirming the district court's decision not to set aside a default where a corporate party initially appeared *pro se*, and failed to have obtained counsel as directed by the Court at the time it moved to set aside the default).

Under these circumstances, there is no evidence of bad faith or egregious conduct. To the contrary, although at times procedurally invalid, Reitman and the Corporate Defendants have taken affirmative steps to resolve the litigation. Thus, the Court finds that the Defendants' default was not willful, which weighs in favor of granting the Motion to Set Aside the Default.

**2. Meritorious Defense**

The second factor for the Court's consideration in deciding whether to vacate a default is whether the defaulting party can present a meritorious defense. In the Second Answer, the Defendants assert a number of affirmative defenses, including: (1) the Plaintiffs' cause of action is barred, in whole or in part, by the statute of limitations; (2) the Plaintiffs were not employed by the Corporate Defendants but rather by B. Reitman Blacktop, Inc.; (3) the Plaintiffs were paid for all of the hours they worked, and (4) the Plaintiff's acknowledged that they had received full payment for their work by signing next to a line stating as such on their paychecks. (Am. Answer ¶¶ 90–95.)

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage. A defense is meritorious if it is good at law so as to give the factfinder some determination to make." Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996) (quoting Anilina Fabrique de Colorants v. Aakash Chems. and Dyestuffs, Inc., 856 F.2d 873, 879 (7th Cir. 1988)). In order to proffer a "meritorious defense," a "defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." Enron, 10 F.3d at 98. Though "[a] defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense," such evidence "is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." Id.

The Court does not need to make a finding as to whether all of the Defendants' affirmative defenses are meritorious. Indeed, the statute of limitations defense, without any evidence beyond the conclusory allegation in the Second Answer, may be insufficient to support vacating an entry of default. See State Farm Mut. Auto. Ins. Co. v. Cohan, 09-CV-2990, 2010 WL 890975, at *4 (E.D.N.Y. March 8, 2010). Furthermore, the Defendants' affirmative defense that the Plaintiffs sued the wrong corporate entity because they were employed by B. Reitman Blacktop may also be insufficient, especially considering that the Amended Complaint states that Defendant Sealcoating "does business as Reitman Blacktop or B. Reitman Blacktop." (Am. Compl. ¶ 13. (emphasis added).) On the other hand, at least two of the Defendants affirmative defenses are properly considered "meritorious defenses" and weigh in favor of granting the Motion to Set Aside the Default.

The Defendants claim that the Plaintiffs were properly paid for all of the hours worked and that each plaintiff signed all of their paychecks indicating that the payment was accurate. In

17

support of the merits of this defense, the Defendants attach to the Motion to Set Aside the Default copies of checks signed by the Plaintiffs during the time period they allege they were improperly compensated. This is the type of evidence which, if submitted and proven credible at trial, "would constitute a complete defense." Enron, 10 F.3d at 98. In opposition, the Plaintiffs contend that whether the Defendants actually paid the Plaintiffs is not a meritorious defense, but rather an issue of damages to be determined at an inquest. However, in the context of a motion to vacate a default, a defense that the parties were properly paid constitutes a "meritorious defense." Franco v. Ideal Mortg. Bankers, Ltd., 07-CV-3956, 2010 WL 3780972, at *3 (E.D.N.Y. Aug. 23, 2010) (holding that the defense that "the employees were paid all wages due to them under FLSA" constituted a meritorious defense for the purposes of vacating an entry of default).

Furthermore, the Plaintiffs argue that the signatures on the checks acknowledging payment cannot constitute a meritorious defense because a worker cannot waive, release, or compromise their rights under the Fair Labor Standards Act. Without getting into the substance of the claims, the Court finds this argument to be unpersuasive for two reasons. First, a defense regarding an acknowledgment of payment is not necessarily an assertion that the Plaintiffs waived their right to bring the action. Second, the Plaintiffs have also asserted unjust enrichment and breach of contract causes of action, as well as causes of action under the New York Labor Law. However, the Plaintiffs do not argue that the signed checks cannot serve as a defense to those causes of action. Thus, the Court finds that the Defendants have presented a meritorious defense weighing in favor of vacating the entry of default.

### 3. Prejudice to the Plaintiffs

The third and final consideration is whether the Plaintiffs will be prejudiced if the Court vacates the default. Here, the Court finds that vacatur is appropriate because there is no indication that the Plaintiffs' will be prejudiced if the Court relieves the Defendants of the entry of default.

"A plaintiff may demonstrate prejudice by showing that his 'ability to pursue the claim has been hindered since the entry of the judgment' or by 'the loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment.'" Raheim v. New York City Health and Hosps. Corp., No. 96-CV-1045, 2007 WL 2363010, at *5 (E.D.N.Y. Aug. 14, 2007) (quoting Farrell v. Cty. Van & Storage, Inc., No. 96-CV-1174, 1996 WL 705276, at *3 (E.D.N.Y. Nov. 25, 1996)) (internal citations omitted). In this context, the Second Circuit has found that delay alone is insufficient to establish prejudice. See Enron, 10 F.3d at 98. Here, the Plaintiffs argue that because of the Defendants' delay there may have been a degradation of evidence such that memories of potential witnesses may have faded or documents may have been lost or destroyed. The Court finds that this speculative prejudice does not outweigh the fact that the Defendants default was not willful and that the Defendants have presented a meritorious defense.

## III. CONCLUSION

The relevant factors for assessing whether a defendant has shown good cause to vacate an entry of default decidedly favor granting the Defendants' Motion to Set Aside the Default. In light of the Court's analysis of the relevant considerations and this Circuit's well-established preference for litigating disputes on the merits, the Court finds that the Defendants' default should be vacated and the Plaintiffs' Motion for a Default Judgment should be denied.

Furthermore, because the Defendants' did not object to the Amended Complaint and submitted the Second Answer, the Court accepts both as the operative pleadings in this matter. Thus, the Motion to Strike the Initial Answer is denied as moot, and the Clerk of the Court is directed to amend the caption to reflect the addition of James Vanderheydt as a Plaintiff. Finally, the Plaintiffs request in their opposition to the Motion to Set Aside the Default that the Court grant them leave to amend the complaint to add "B. Reitman Blacktop, Inc." as a defendant. The Court denies this informal request and directs the Plaintiffs' to follow the proper procedure in seeking to amend the complaint.

**SO ORDERED.**

Dated: Central Islip, New York
December 16, 2010

　　　　　　　　　　　　　　　　　　　　　　　　　___*/s/ Arthur D. Spatt*___
　　　　　　　　　　　　　　　　　　　　　　　　　　ARTHUR D. SPATT
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge